# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO OSEGUERA PEREZ, | CASE NO. CV-F-06-0071 LJO |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 13) |
| vs. | |
| JO ANNE BARNART, Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

Plaintiff Sergio Oseguera Perez ("claimant") seeks judicial review of an administrative decision denying his claim for Disability Benefits under the Social Security Act ("Act").  Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a May 25, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings.   Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed his complaint on January 17, 2006 and his opening brief on July 4, 2006. The Commissioner filed her opposition to the appeal on September 5, 2006. Claimant filed a reply brief on September 11, 2006.

## **BACKGROUND**

### **Administrative Proceedings**

Claimant filed an application for Disability Insurance Benefits under the Social Security Act on

August 19, 2003. (Administrative Record "AR" 51-53.) He alleges a disability onset of August 1, 2002 due to back pain and arthritis. (AR 60.) On October 21, 2003, claimant filed an application for Supplemental Security Income. (AR 342-344.) Claimant's applications for benefits were denied initially and on reconsideration. (AR 27-32, 34-38.) Claimant's application was denied by an Administrative Law Judge ("ALJ") in a decision issued on March 19, 2005. (AR 11-23.) Claimant's application for benefits was denied upon reconsideration. (AR 5-7.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**Claimant's Background and Work Experience**

Claimant was born on February 6, 1965 and completed the ninth grade in Mexico. (AR 355.) Claimant's past relevant work was as an air conditioning installer, warehouse stocker and farm worker. (AR 357-358.)

**Medical History**

The pertinent medical history is summarized as follows.

Claimant was treated by Robert Whitmore, M.D. from April 2002 to January 2003. (AR 111-177.) Claimant reported a work related injury resulting in low back pain. (AR 177.) He was released to modified duty on April 9, 2002 and full duty on April 30, 2002. (AR 174.) Dr. Whitmore assessed that claimant could stand or walk up to eight hours at a time, eight hours in a total day, sit up to eight hours at a time, and eight hours during a total day, reach above shoulders up to eight hours a total day, drive, perform repetitive hand motions, during an eight hour work day, and lift and carry up to twenty, then thirty, pounds. On April 18, 2002, Dr. Whitmore again released claimant to full duty work on April 30, 2002. Dr. Whitmore later extended the full duty return date to May 7, 2002, May 31, 2002, June 17, 2002, July 1, 2002, July 29, 2002, September 9, 2002, October 21, 2002, November 4, 2002, February 3, 2003. (AR 122, 132, 136, 145, 154, 158, 166, 170.) Throughout his treatment of claimant, Dr. Whitmore released claimant to modified work, but which was unavailable with his employer. (AR 113.)

In an orthopedic consultation on by Gerald Barnes, M.D. in June 2002, claimant complained of low back pain, numbness. (AR 148.) Dr. Barnes could not explain the continued pain for the type of injury and recommended an MRI. (AR 149.) An MRI of the lumbar spine was performed on July 16,

2002.  (AR 143.)  It showed good alignment of the lumbar spine, normal height, signal, and space in vertebral and bodies, normal disc spaces (L1-2, L2-3, L3-4 and L4-5) with minimal disc dehydration, mild narrowing at L5-S1 disc space, with moderate dehydration and mild 2mm broad based disc bulging just abutting the thecal sac, no evidence of encroachment around the neural foramina throughout the lumbar spine, and mild facet degenerative changes L4-5, L5-S1, and minimal at L3-4.  (AR 143.)

On January 31, 2003, Ronald Whitmore, M.D. prepared an evaluation report of claimant's condition.  (AR 112-116.)  He found claimant had degenerative disk disease and was precluded from doing substantial work, but should be vocationally rehabilitated.  (AR 115.)

State Agency physician Patrick Bianchi, M.D. completed a Physical Residual Functional Capacity Assessment form on September 23, 2003.  (AR 102-109.)  Dr. Bianchi assessed claimant with the physical capacity to lift or carry ten pounds frequently and occasionally, stand or walk at least two hours in an eight hour work day, sit about six hours in an eight hour work day, with a frequent ability to push or pull in both the upper and lower extremities.  (AR 103.)  He further assessed claimant could never climb ladders, ropes, and scaffolds, but he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (AR 104.)

From September through July 2004, claimant was treated by Christopher F. Amsden, M.D., a physical medicine and rehabilitation specialist.  (AR 184-198, 242-274, 293-341.)  In an initial visit on September 2, 2003, claimant was seen for low back pain, depression.  (AR 191-192.)  On examination, lumbar flexion was mildly uncomfortable and some decreased range of motion during walking, range of motion testing, straight leg raising, heel-toe walking, with tenderness noted in the lower left extremity. (AR 193).  Dr. Amsden impression was facetal pain and mechanical pain.  (AR 196.)  At a September 11, 2003 visit, claimant was seen for medication change and was feeling better with the medication. (AR 187.)  Claimant reported being in vocational training.  On examination, claimant was grossly stiff with lumbosacral posturing.  (AR 188.)  Claimant's medication was altered to address side affects of heartburn and stomach irritability.  (AR 188.)  On October 20, 2003, claimant presented with a stiff lumbosacral posture, particularly when arising from sitting, but no gross changes were otherwise noted. (AR 184). Dr. Amsden diagnosed low back injury, spondylolysis at L5 with listhesis grade 1, a hint of S1 radicular pain, and depression from chronic pain syndrome. (AR 184). Dr. Amsden released claimant

to semi-sedentary work.

Claimant saw James Barnett, M.D. a neurological specialist. (AR 200-207.) Claimant reported low back pain and radiation that affect all activities of daily living. (AR 207.) On examination, claimant was stiff, normal neurologic exam, no sensory deficit, negative straight leg raising. (AR 208.) Dr. Barnett assessed myofascial pain, degenerative disc disease with a very small disc protrusion at L5/S1. (AR 209.) On December 9, 2002, Dr. Barnett administered injections, which immediately reduced claimant's pain. (AR 205, 202.) Claimant failed to show up several times for the follow up epidural injections. (AR 202, 204.) Dr. Barnett reported that claimant continually failed to follow his advice that claimant stretch and exercise on a daily basis. (AR 202.) When injected, the injections were successful. (AR 201.)

On November 20, 2003, claimant presented for a psychological assessment with Joseph Hernandez Ph.D. (AR 218-220.)   Dr. Hernandez did not find decrements in cognitive abilities or organic brain damage or personality disorder. (AR 219.) Dr. Hernandez assessed severe depression, not otherwise specified and pain disorder. (AR 219.) Dr. Hernandez assessed a Global Assessment of Functioning of 45. (AR 220.)

Medical consultant James Cunningham, a non-examining State Agency medical source, assessed that claimant had moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (AR 221-227).

Gertrudis C. Agcaoili, M.D., a non-examining State psychiatrist, assessed that claimant had moderate limitations in activities of daily living, social functioning, and concentration, persistence and pace. (AR 228-241.) Dr. Agcaoili assessed that claimant was able to perform simple, repetitive tasks with limited public contact. (AR 240).

On March 16, 2004, Dr. Amsden completed a form Medical Opinion re Ability to Do Work-Related Activities. (AR 243-246.) Dr. Amsden assessed that claimant could lift less than ten pounds (to waist level) occasionally and frequently, but was unable to squat and stand. (AR 243.) Dr. Amsden also assessed that claimant was able to walk or stand (with normal breaks) during an eight hour work

1   day for about two hours, needed to change positions while seated up to ten minutes and three to five

2   minutes while standing.  He opined that claimant needed to walk around every ten minutes for ten

3   minutes each time and needed to shift at will from a sitting, standing, or walking position.  (AR

4   243-244.)  Dr. Amsden opined that claimant needed to lay down frequently during the day and would

5   need to be absent from work more than 3 times in a month.  (AR 245.)

6         On May 28, 2004, Dr. Hernandez reported claimant's improved depressive symptoms and

7   additional psychotherapy sessions were recommended.  (AR 289-290.)

8         On July 7, 2004, Dr. Amsden prepared a supplemental report in the context of worker's

9   compensation.  (AR 295.)  Dr. Amsden reported claimant's complaint of pain in the low back at 10 out

10  of 10.  (AR 295.)  Dr. Amsden found stiff lumbosacral posturing and antalgic gait on left.  (AR 296.)

11  He assessed lumbar mechanical and radicular pain and moderate discogenic disease.  He withdrew his

12  impression of spondylolisthesis. (AR 296.)  Dr. Amsden released claimant to semi-sedentary work from

13  September 2003 to August 31, 2004.  (AR 296.)

14  **Hearing Testimony**

15        Claimant testified that he stopped working in August 2002.  He injured himself and he had pain

16  in the lower back, head, right shoulder, left arm, left leg and bones.  (AR 357.)  He cannot work in the

17  fields because they have to bend all day and he cannot lift weight.  (AR 360.)  The sun and cold bother

18  him and makes his body hurt.  (AR 360.)  Claimant lives with his wife and three children.  (AR 363.)

19  He does not cook, mop, sweep, do dishes, or laundry.  (AR 364.)  He watches TV two hours a week.

20  He cannot concentrate and he does not read.  (AR 365.)  He walks, stretches, takes care of his lawn,

21  waters the grass, goes to church, and drives to church.  (AR 366.)  He drives two times a day.  (AR 368.)

22  His doctor told him not to do heavy lifting or anything above 20 pounds. (AR 370.)  He cannot stand

23  longer than 5 minutes and sit only for 10 minutes without moving.  (AR 372-373.)  He can walk 2 miles.

24  He does not have any problem forward reaching or overhead reaching.  (AR 374.)  He has severe pain,

25  and in his back it is continuous and comes and goes in his legs.  (AR 376.)  He does water therapy which

26  helps the pain and laying down.  (AR 377.)  He has side effects from the medication from frequent rest

27  room needs and loss of sleep.

28        Vocational Expert ("VE"), Susan Moranda, testified.  (AR 379.)  Claimant's past relevant work

1  as an field hand was heavy work, as a forklift operator, medium work and as an air conditioner helper,

2  heavy exertion.  The ALJ gave a hypothetical that claimant had limited education and could lift, push

3  pull 20 pounds occasionally, 10 pounds frequently and walk and stand frequently and sit stoop

4  occasionally. (AR 381.)  With this hypothetical, the VE testified that claimant could not perform his

5  past relevant work but could perform work as a fast food worker, janitor and hand presser.  (AR 381.)

6  The VE eroded some of the occupational base for each position due to claimant's limited knowledge of

7  English. (AR 382.)  In the second hypothetical, the ALJ added that claimant is slightly limited in the

8  ability to do simple routine tasks, slight to moderate pain. (AR 382.)  The VE added an additional 20

9  percent erosion factor. (AR 382.)  In a slight modification to the second hypothetical, the ALJ included

10  that claimant was slightly limited in attention, concentration, understanding and memory.  (AR 382.)

11  The VE testified that there would be a 30 percent erosion.  (AR 382.)  There would be an 80 percent

12  erosion if claimant had moderate to severe pain and required an sit/stand option. (AR 382.)   In a

13  hypothetical where claimant was limited to sedentary work, claimant would not return to past relevant

14  work but could perform work as a small parts assembler and a hand presser.  (AR 382.) The ALJ added

15  that the claimant had non-exertional limitations of slightly limited in attention, concentration,

16  understanding and memory.  The VE testified that there would be a 30 percent erosion.  There would

17  be an 80 percent erosion if claimant had moderate to severe pain and required an sit/stand option.  (AR

18  384.)

19  **ALJ Findings**

20      In his March 19, 2005 decision, the ALJ characterized the "primary issue" before him as whether

21  claimant was disabled. (AR 14.) In determining claimant was not disabled and not eligible for disability

22  benefits, the ALJ made the following findings (AR 22-23):

23      1.    The claimant meets the nondisability requirements for a period of disability and

24            Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and

25            is insured for benefits through the date of this decision.

26      2.    The claimant has not engaged in substantial gainful activity since the alleged onset of

27            disability.

28      3.    The claimant's back, shoulder, arm and leg impairments are considered "severe" based

6

1        on the requirements in Regulations 20 CFR §§404.1520( c) and 416.920( c).

2      4.    These medically determinable impairments do not meet or medically equal one of the

3         listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4      5.    The ALJ finds the claimant's allegations regarding his limitations are not totally credible

5         for the reasons set forth in the body of the decision.

6      6.    Accordingly, the ALJ finds the claimant retains the residual functional capacity to

7         perform sedentary work subject to the following limitations related to the frequent

8         moderate to severe pain that he is in; slight limitation in both attention and concentration

9         and understanding and memory; slightly limited ability to do simple, routine, repetitive

10        tasks; and requires moderate supervision.

11    7.    The claimant is unable to perform any of his past relevant work. 20 CFR §§404.1565 and

12        416.965.

13    8.    The claimant is a "younger individual between the ages of 18 and 44."  20 CFR

14        §§404.1563 and 416.963.

15    9.    The claimant has "a limited education." 20 CFR §§404.1564 and 416.964.

16    10.   The claimant has no transferable skills from any past relevant work and/or transferability

17        of skills is not an issue in this case. 20 CFR §§404.1568 and 416.968.

18    11.   Considering the types of work that the claimant is still functionally capable of performing

19        in combination with the claimant's age, education and work experience, he could be

20        expected to make a vocational adjustment to work that exists in significant numbers in

21        the regional economy.  Examples of such jobs include work as an assembler, of which

22        there are 1,500 jobs in the regional economy, and handpresser, of which there are 240

23        jobs in the regional economy.  Regional economy being the entire State of California.

24    12.   The claimant was not under a "disability," as defined in the Social Security Act, at any

25        time through the date of this decision. 20 CFR §§404.1520(g) and 416.920(g).

26    13.   The claimant has no exertional limitations.  20 CFR §§404.1545 and 416.945.

27  /////

28  /////

1

**DISCUSSION**

2

**Standard of Review**

3      Congress has provided a limited scope of judicial review of a Commissioner's decision.  *See* 42

4 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the

5 determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*,

6 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510

7 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating

8 physician's findings).  Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402

9 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119,

10 n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as

11 adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

12      The record as a whole must be considered, weighing both the evidence that supports and detracts

13 from the Commissioner's conclusion.  *Jones,* 760 F.2d at 995.  If there is substantial evidence to support

14 the administrative findings, or if there is conflicting evidence that will support a finding of either

15 disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d

16 1226, 1229-1230 (9th Cir. 1987).

17      Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

18 determine whether it is:  (1) based on proper legal standards; and (2) supported by substantial evidence

19 in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

20      Claimant contends the ALJ's erred as follows: (1) improperly rejected claimant's testimony, (2)

21 ignored medical evidence by the treating physician, (3) improperly rejected the treating physician, (4)

22 improperly rejected the opinions of the medical consultants, (5) failed to account for medication side

23 effects, (6) ignored lay witness testimony, and (7) improperly adopted vocational testimony.

24

**The Sequential Analysis**

25      To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial

26 gainful activity due to a medically determinable physical or mental impairment which has lasted or can

27 be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382a(3)(A).

28      To achieve uniformity of decisions, the Commissioner has promulgated regulations which

contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled.  20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a).  The five-step process is summarized as follows:

    1.    Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

    2.    If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

    3.    If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

    4.    If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

    5.    If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

    The claimant has the initial burden of proving the existence of a disability within the meaning

---

[1]    *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2]    If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

[3]    At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity.  *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4]    At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

1   of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima
2   facie case of disability by showing that a physical or mental impairment prevents him from engaging in
3   his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§
4   404.1520(f) and 416.920(f).

5       In this case, claimant convinced the ALJ that he met the criteria in step one of the sequential
6   analysis; that he has not been engaged in substantial gainful employment.

7       At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the
8   medical evidence establishes severe impairments of claimant's back, shoulder, arm and leg impairments.

9       At step three, the ALJ found that claimant did not have any impairment or combination of
10  impairments meeting or equaling the listings.

11                    **The ALJ's Finding of Residual Functional Capacity**

12      To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial
13  gainful activity due to a medically determinable physical or mental impairment which has lasted or can
14  be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382a(3)(A).

15      The Commissioner has final responsibility to determine a claimant's residual functional capacity.
16  20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote
17  a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R.
18  §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light,
19  medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found
20  that claimant  had the residual functional capacity to perform sedentary work with restrictions.
21  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying
22  articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which
23  involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.
24  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
25  20 C.F.R. §§ 404.1567(a) and 416.967(a).

26      Here, the ALJ found claimant has the residual functional capacity to perform sedentary work with
27  a slight limitation in both attention and concentration and understanding and memory and slightly
28  limited in ability to do simple routine repetitive tasks. (AR 20.)

**Claimant's Testimony**

Claimant argues various errors in the ALJ's finding claimant not credible.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148. An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions;

(6)     Claimant's daily activities;

(7)     Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

11

1    (8)    Ordinary techniques to test a claimant's credibility.

2  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

3    The ALJ partially accepted claimant's complaints of pain, but found that the claimant's

4  subjective complaints were not entirely credible.  The ALJ considered ordinary techniques of credibility

5  in partially rejecting claimant's complaints of debilitating pain and symptoms.

6    First, the ALJ noted that his complaints were inconsistent with the objective medical evidence:

7        "The claimant's statements and those of a third party concerning the
8        claimant's impairments and their impact on his ability to work are not
         entirely credible in light of the discrepancies between the claimant's
         assertions and information contained in the documentary reports and the
9        reports of the treating and examining practitioners."  (AR 17.)

10  In support of this statement, the ALJ considered the long history of diagnostic impressions in the

11  progress reports of Dr. Whitmore.  The ALJ reviewed all of Dr. Whitmore's progress notes and gave his

12  opinions substantial weight.  The ALJ considered the conflicting opinion of Dr. Amsden and rejected

13  that opinion.  It is for the Commissioner to resolve conflicting evidence.  *Sanchez v. Secretary of HHS*,

14  812 F.2d 509, 511 (9th Cir. 1987). While subjective pain testimony cannot be rejected on the sole ground

15  that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant

16  factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*,

17  261 F.3d 853, 857 (9th Cir. 2001).  The courts do not have the responsibility for weighing the evidence

18  and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v.*

19  *Perales*, 402 U.S. at 399.

20    The ALJ also determined claimant did not comply with his prescribed course of treatment.  The

21  ALJ noted that claimant was reported to be "extremely erratic and non-compliant with his medication."

22  (AR 17.) The ALJ noted that claimant missed a number of treatment appointments, indicating that his

23  symptoms are not as severe as alleged. ( AR 17.)  Failure to comply with a treatment program

24  demonstrates lack of a disability. *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (Failure to follow

25  prescribed treatment is a proper basis for rejecting allegations of disabling pain.); 20 CFR 404.1530

26  (requiring following treatment to be found disabled);  *See Thomas v. Barnhart*, 278 F.3d 947, 958-959

27  (9th Cir. 2002) (ALJ may consider inconsistencies  in and among claimant's testimony, conduct, daily

28  activities, and third party statements).

The ALJ also noted the scope of claimant's activities of daily living:

> "The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  He can drive, walk some distance and exercises at a gym.  The claimant is apparently able to assist with the care for young children at home, which can be quite demanding both physically and emotional[ly]."  (AR 17.)

*See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries is inconsistent with the presence of a condition which would preclude all work activity.)  If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Claimant argues that he should not be penalized in credibility for attempting to lead a normal life, such as joining a gym and exercising, citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

In *Reddick*, the Ninth Circuit held that claimants should not be penalized for attempting to carry on normal activities, and that "[o]nly if the level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility." In *Reddick*, the nature of the claimed disability was chronic fatigue syndrome. *Id.* at 719. The court found the activities on which the ALJ erroneously relied were "sporadic and punctuated with rest," and thus consistent with her inability to work for sustained periods due to fatigue. *Id.* at 722. Here, by contrast, claimant claims to suffer from disabling pain, not fatigue, and the particular activities of daily living in which he admittedly engages are not "fully consistent" with those claims. The ALJ properly considered those activities in assessing claimant's credibility.  Accordingly, the ALJ did not err in discrediting claimant's subjective testimony regarding pain.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604.  The ALJ stated clear and convincing reasons for rejecting the extent of claimant's subjective pain complaints. Claimant's testimony simply reveals inconsistencies among his pain complaints, physical capabilities and activities.  Thus, there is substantial evidence in the record to support the ALJ's rejection of claimant's subjective complaints.

**Treating and Reviewing Physicians**

Claimant argues that the ALJ should have adopted Dr. Amsden's limitations, the limitations imposed by reviewing physician, Dr. Bianchi, and the moderate mental limitations assessed by reviewing physician Dr. Agcaoili.

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and ambiguities in treating physician's opinion concerning level of disability sustained by social security claimant, were specific and legitimate reasons for not accepting physician's opinion.)

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez,* 876 F.2d at 762 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. §416.928. Claimant bears the burden of proving that he is disabled by presentation of "complete and detailed objective medical reports of h[is] condition from [a] licensed medical professional." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. 404.1512(a)-(b), 404.1513(d)).

The ALJ considered Dr. Amsden's treatment records and opinions.  In particular, the ALJ

14

considered a draft medical consultation entitled "Draft Pending Record Review." (AR 253.) The ALJ

summarized:

> "Dr. Amsden also prepared a draft medical consultation but is was not
> signed. According to that draft medical consultation, the claimant cannot
> bend forward at all, can sit and drive for 60 minutes maximum, and stand
> 10 minutes maximum.  In the draft Dr. Amsden recommended that the
> claimant be released to sedentary work, effective September 2, 2003
> through the following month; Dr. Amsden recommended that if work is
> available, he should it." (AR 17-18.)

The ALJ gave "some weight" to Dr. Amsden's findings. (AR 18.)  The ALJ considered the functional

limitations imposed by Dr. Amsden:

> "Dr. Amsden indicated that the claimant could lift/carry 10 pounds
> frequently and occasionally; stand for less than 2 hours in an eight-hour
> day (but is unable to walk and work); sit for about 2 hours during and
> eight-hour day.  The claimant can sit for 10 minutes before changing
> position, can stand for 3-5 minutes before changing position; must walk
> around with a frequency of 10 minutes and for 10 minutes each time."
> (AR 17.)

The ALJ also considered Dr. Amsden's Medical Opinion Re: Ability to Do Work-Related Activities,

dated March 16, 2004.  (AR 18, 243.)  The ALJ noted that the document is a "form with some

annotations, but they are not very detailed.  His draft medical consultation is unsigned and because of

this I give it little weight." (AR 18,)  The ALJ also considered that Dr. Amsden, on July 7, 2004 released

clamant to "semi-sedentary work release effective September 2, 2003 through August 31, 2004." (AR

17, 296.)

Here, the ALJ evaluated the findings in the MRI and the disparity between the functional

assessments from Drs. Amsden and Whitmore. Apart from Dr. Amsden's check-off report, no other

examining or reviewing physician opined that claimant could sit for only two hours in an eight-hour

work day, needed to change positions while sitting every ten minutes, required a sit-stand-walk option,

needed to lie down frequently and at unpredictable intervals, and was likely to miss more than three days

of work each month. Accordingly, the ALJ was entitled to reject Dr. Amsden's limitations because the

limitations appeared solely in the form of claimant's subjective complaints and a check-off report, which

did not contain any evidence other than that relied upon by Dr. Whitmore, to explain the basis of Dr.

Amsden's conclusions. See *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996) (An ALJ may permissibly

reject check-off reports that do not contain any explanation of the bases of their conclusions.)  Dr.

1   Whitmore's documentation is supported by two specialists, Drs. Barnes and Barnett, and more

2   detailed in nature, and therefore, was supported by substantial evidence.  On balance, the ALJ properly

3   found claimant's inconsistencies as to his abilities, credibility questions and objective medical evidence

4   outweighed Dr. Amsden's assessments.

5        Claimant argues that the ALJ failed to credit Dr. Bianchi's manipulative limitations.  (AR 105.)

6        State Agency reviewing physician Dr. Bianchi opined, among other things, that claimant was

7   limited in gross and fine manipulation.  The ALJ noted that Dr. Bianchi found claimant had limited

8   handling and fingering but no other manipulative limitations.  (AR 19-20.)

9        The Ninth Circuit has long held that ALJ does not need to discuss all evidence presented to him.

10  *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir.1984). An ALJ need explain why significant and

11  probative evidence has been rejected.  *Id.*  An example of significant and probative evidence is

12  uncontroverted medical evidence. *Id.* at 1395. The *Vincent* court found controverted medical evidence

13  and lay testimony to be neither significant nor probative. *Id.*

14       The ALJ stated his reasons why he did not accept the limitations as being consistent with the

15  record as a whole. The opinion of the state agency physician was controverted by other evidence in the

16  Record.  For instance, Dr. Whitmore did not impose manipulative limitations. (See e.g., 128, 140.) Dr.

17  Barnett did not impose such limitations.  (AR 209-210.)  Indeed, claimant has not cited to the Record

18  where other objective evidence supports the assessed limitation, and the Court's review of the Record

19  does not disclose such evidence.  Thus, as controverted evidence, the ALJ was not required to explicitly

20  discuss it.  Accordingly, the ALJ did not err by failing to include the state agency physician's assessed

21  manipulative limitations. 20 C.F.R. §416.927(d)(4) ("the more consistent an opinion is with the record

22  as a whole, the more weight we will give to that opinion."); *see also*, *Magallanes v. Bowen*, 881 F.2d

23  747, 751 (9th Cir. 1989) ("To the extent that the nontreating physician's opinion rests on objective

24  clinical tests, it must be viewed as substantial evidence.")

25       Claimant also argues that the ALJ erred in failing to adopt Dr. Agcaoili moderate limitations in

26  mental functioning.

27       The ALJ evaluated the Dr. Agcaoili's assessed limitations:

28            "A Psychiatric Review Technique was prepared by Dr. Agcaoili, M.D.

It found that the claimant had an affective disorder, depressive syndrome. The claimant had mild to moderate physical restrictions of his activities of daily living; moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace. There was insufficient evidence to determine if the claimant had episodes of decompensation, each of extended duration." (AR 18.)

The ALJ determined to give "some" weight to this opinion:

I give some weight to these findings as the finding of a pain disorder is consistent with the record." (AR 18.)

Dr. Agcaoili translated the limitations into work restrictions and limited claimant to simple repetitive tasks with limited public contact. (AR 240.) The ALJ incorporated these limitations into the residual functional capacity assessment. The ALJ found claimant had slight limitation in both attention and concentration and understanding and memory; slightly limited ability to do simple, routine, repetitive tasks; and requires moderate supervision. This assessment is consistent with that of Medical consultant James Cunningham, a non-examining State Agency medical source, who only found that claimant had moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (AR 221-227).

It is the ALJ's duty to resolve conflicting medical evidence. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.). The opinion of a reviewing physician and the ALJ's conducting an independent analysis of the medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Thus, there is substantial evidence in the Record to support the ALJ's decision.

**Failure to Consider Dr. Whitmore's Final Comprehensive Report**

Claimant argues that while the ALJ gave great weight to Dr. Whitmore's progress notes and opinions, the ALJ failed to mention Dr. Whitmore's January 31, 2003 Final Comprehensive Report. (Opening Brief p. 21; AR 112-116.) This report showed limited range of motion and opined that claimant should be precluded from performing substantial work. (AR 115.)

The ALJ did indeed consider Dr. Whitmore's Final Comprehensive Report. The ALJ

1   summarized the report:

> "A medical report was prepared by Dr. Whitmore, M.D. The diagnostic
> impression of that report was that the claimant had degenerative disk
> disease of the lumbosacral spine. Dr. Whitmore's opinion was that the
> claimant has a disability precluding substantial work. No evidence of a
> preexisting or concurrently disability unrelated to the industrial injury
> was found." (AR 18) (Evidence citations omitted.)

The ALJ then extensively reviewed progress reports of Dr. Whitmore and the limitations placed on claimant by Dr. Whitmore. (AR 19.)

Claimant appears to argue that since Dr. Whitmore precluded claimant from performing "substantial work," claimant is precluded from performing <u>any</u> work. (Opening Brief p. 22.) The reference to "substantial work," however, is not synonymous within the context of the Social Security Act. Dr. Whitmore was treating claimant within the confines of his Workers' Compensation claim and was referring to claimant's return to the former work as an air conditioner installer. Indeed, Dr. Whitmore concluded that the "permanent disability resulted from this injury will permanently preclude the patient <u>from returning to his usual customary work</u>." (AR 115) (emphasis added.) Dr. Whitmore did not preclude claimant from <u>all</u> work. The ALJ logically interpreted this limitation in terms of claimant's past work and not as a limitation on all work. *See Morgan v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 601, 603 (9th Cir.1999) (Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of physicians falls within this responsibility.) The ALJ is entitled to draw inferences logically flowing from the evidence in the proceedings before him. *See Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996). The ALJ's inference is logical because Dr. Whitmore recommended claimant be evaluated for vocational rehabilitation. (AR 115.) Further, any ultimate conclusion as to disability is reserved to the Commissioner of Social Security. *Morgan v. Comm'r of the Social Sec. Admin.,* 169 F.3d at 600.

**Medication Side Effects**

Claimant argues that the ALJ failed to properly consider the side effects of claimant's medication. He points to various medications he was taking and noted that he reported his medications had various side effects including dizziness, sleepiness, lack of concentration, among other effects. (Claimant's opening brief. p.29.)

1    The ALJ stated that he had "considered the listed medications along with the contents of the

2    claimant's medical records." (AR 17.)  The ALJ considered that claimant had a "pain disorder" and a

3    "general medical condition" (AR 17), but that claimant had been "extremely erratic and non-compliant

4    with his medications," quoting Dr. Hernandez.  (AR 17, 291.)  Dr. Whitmore reported that claimant

5    stopped taking the medication which allegedly caused dizziness and nausea and was taking only Tylenol

6    for pain. (AR 165, 167).  He reported negative for urine bowel dysfunction.  (AR 165.)  In March 2004,

7    Dr. Amsden adjusted claimant's medication due to complaints of dizziness and sleepiness.  (AR 313-

8    314.)

9    The contemporaneous medical records reveal adjustments to the medication and no indication

10    from any medical provider that claimant's side effects of medication functionally impaired claimant.

11    *See Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985) (requiring clinical evidence to support claims

12    of impairing side effects from medication).  The ALJ adequately evaluated the medication taken by

13    claimant.  The Court finds no error.

**Lay Witness Testimony**

15    Claimant argues that the ALJ erred in inadequately addressing lay witness statements of

16    claimant's wife's questionnaire.

17    The ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each

18    witness whose testimony he rejects.  *Smolen v. Chater*, 80 F.3d 1273, 1288, 1292 (9th Cir. 1996) (finding

19    the ALJ's reasons for rejecting lay testimony insufficient and thus crediting the testimony).  Lay witness

20    testimony is "qualified evidence" that the ALJ must consider.  *See Sprague v. Bowen,* 812 F.2d 1226,

21    1231-32 (9th Cir.1987).

22    The finding of disability must be based upon objective medical evidence and not upon lay

23    witness testimony.  See e.g., SSR 83-20 ("impact of lay evidence on the decision of onset will be limited

24    to the degree it is not contrary to the medical evidence of record.")  The ALJ stated that the lay witness'

25    testimony was contradicted by the medical evidence. Lack of support in the medical evidence is a

26    recognized basis to reject lay evidence. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) ("One reason

27    for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

28    The ALJ summarized claimant's wife's statements as follows:

> "A function Report Adult Third Party was prepared by the claimant's wife and dated January 23, 2004. She wrote that the claimant doesn't like to be around people as much as he used to and the he no longer plays sports or takes the children to the park." (AR 16.)

The ALJ rejected the lay testimony because it was inconsistent with "claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." (AR 17.) Claimant's wife reported that claimant is able to attend church, wash the car, wash dishes, mow the lawn, drive, shop, manage his funds, and clean the garage. (AR 85-89.) In his testimony, claimant reported that he goes to the park and picks up the kids from school. (AR 367.)

The ALJ made note of this discrepancy and specifically stated:

> "The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He can drive, walk some distance and exercises at a gym. The claimant is apparently able to assist with the care for young children at home, which can be quite demanding both physically and emotional[ly]." (AR 17.)

Thus, the ALJ considered both the Record as a whole and pinpointed specific areas which were inconsistent with the wife's testimony. Accordingly, the ALJ has stated germane reasons for rejecting the lay testimony.

**VE Testimony**

Claimant argues that the ALJ relied upon jobs provided by the VE during the hearing that exceed the residual functional capacity of sedentary work.

At Step Five, it is the Commissioner's burden to establish that jobs exist in the national economy that the plaintiff can perform. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); 20 C.F.R. §404.1520(f). The Commissioner may meet this burden in two different ways: (1) the testimony of a vocational expert ("VE"), or (2) by reference to the Medical-Vocational Guidelines at 20 CFR Part 404, subpart P ("grids"). *Osenbrock v. Apfel*, 240 F.3d at 1162. Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy. *Id.* at 1162-1163.

Here, the ALJ employed a vocational expert to opine as to whether claimant could perform any past relevant work and whether other available jobs exist in the national economy. Vocational experts

1   may discuss more specific jobs than the general category of jobs found in the DOT. *Moncada v. Chater*,

2   60 F.3d 521, 524 (9th Cir. 1995); *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995) ("vocational

3   experts can testify whether particular applicants for disability benefits would be able to perform

4   subcategories of jobs within the DOT.").

5       Claimant argues that VE testified contrary to the DOT and that the ALJ erred in accepting the

6   positions.  Claimant argues that the two positions of assembler and hand presser are listed in the DOT

7   as light exertion, not sedentary as the VE opined.

8       Introduction of evidence of the characteristics of specific jobs available in the local area through

9   the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the

10   job title is classified in the DOT.  *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995).  Although the

11   Commissioner may depart from the job descriptions listed in the DOT, such a departure is permissible

12   only if "the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d

13   at 1435.

14       The VE testified that the positions exist as sedentary jobs.  (AR 383.)  These same positions exist

15   at a light level, but the VE also identified the positions at a sedentary level.  There is no evidence that

16   contradicts the VE's experience in this regard.  *Johnson v. Shalala*, 60 F.3d at 1435-36 (Rote reliance

17   on the Dictionary of Occupational Titles, even by the vocational expert herself, is inappropriate where

18   the vocational expert's practical experience with the job market reveals a contrary classification.)  The

19   hypothetical posed to the VE clearly identified work at a sedentary level, to which the VE identified

20   sedentary work.  (AR 383.)  The fact that some jobs listed by the vocational expert as sedentary are also

21   listed as "light" work in the DOT is irrelevant.  Vocational experts "can testify whether particular

22   applicants for disability benefits would be able to perform subcategories of jobs within the DOT."

23   *Moncada v. Chater*, 60 F.3d at 524.

24   /////

25   /////

26   /////

27   /////

28   /////

1

## **CONCLUSION**

2      The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by

3  substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this

4  Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social

5  Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant

6  Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Sergio Oseguera Perez.

7  IT IS SO ORDERED.

8  **Dated:      October 23, 2006**                          **/s/ Lawrence J. O'Neill**
   b9ed48                                          UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28